Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

**Homeland Security**

MEMORANDUM FOR DHS FOIA OFFICERS AND FOIA PROFESSIONALS

FROM:  Catrina Pavlik-Keenan
CATRINA M PAVLIK KEENAN
Digitally signed by CATRINA M PAVLIK KEENAN
Date: 2023.02.09 15:46:00 -05'00'
Deputy Chief Freedom of Information Act Officer

SUBJECT:  Guidance to DHS Employees on Conducting the Freedom of Information Act's "Foreseeable Harm Standard" Analysis

## I.   Introduction

Federal courts recently have closely scrutinized agency compliance with the provision of the Freedom of Information Act (FOIA), as amended pursuant to the FOIA Improvement Act of 2016, stating agencies or departments may only withhold responsive records "if the agency reasonably foresees that disclosure would harm an interest protected by" an exemption or if "disclosure is prohibited by law."[1]  This is typically referred to as "the foreseeable harm standard."  On March 15, 2022, the Attorney General issued a memorandum for Heads of Executive Departments and Agencies entitled "Freedom of Information Act Guidelines" which set forth guidelines to "update and strengthen the federal government's commitment to the fair and effective administration of FOIA."[2]  As articulated in those guidelines, the Attorney General reaffirmed the requirements in the FOIA, and emphasized that agencies or departments may only withhold responsive records "if the agency reasonably foresees that disclosure would harm an interest protected by" an exemption or if "disclosure is prohibited by law."[3]  Thus, in light of the Attorney General's memorandum and case law precedent, the DHS Deputy Chief FOIA Officer provides this guidance to DHS FOIA professionals in applying and articulating the foreseeable harm standard.

The purpose of this memorandum is to ensure that FOIA professionals adequately address the foreseeable harm standard when processing initial FOIA requests and FOIA administrative appeals.  The discussion of foreseeable harm presupposes that a FOIA exemption applies in the first instance.[4]  The foreseeable harm standard is not satisfied by generalized and conclusory statements, but instead requires a more rigorous and particularized showing of harm for each category of documents to be withheld.  In essence, the foreseeable harm standard places an independent and meaningful burden on agencies, representing a heightened standard.

---

[1] 5 U.S.C. § 552(a)(8)(A)(i).

[2] Office of the Attorney General, U.S. Department of Justice, *Freedom of Information Act Guidelines* (March 15, 2022), available at https://www.justice.gov/ag/page/file/1483516/download.

[3] 5 U.S.C. § 552(a)(8)(A)(i).

[4] For further discussion on the FOIA exemptions, see the Department of Justice Guide to the Freedom of Information Act.  Available here: https://www.justice.gov/oip/doj-guide-freedom-information-act-0.

FOR PUBLIC RELEASE

*FOR PUBLIC RELEASE*

## II. Background

The Freedom of Information Act (FOIA)[5] establishes a statutory right for the public to request Federal agency records and requires agencies to make records that are responsive to these requests promptly available.  The FOIA has nine exemptions to this general rule of mandatory disclosure.[6]  Many years before the FOIA Improvement Act of 2016 amended the FOIA, if an agency determined one or more of the nine FOIA exemptions applied to a responsive record, the analysis on whether to withhold the record[7] was complete and the record could be withheld, an approach which courts upheld.  Later, based on evolving case law, several administrations adopted a policy requiring the agency to not only identify a FOIA exemption that applied to the record, but also to determine whether it could reasonably foresee that the disclosure of the record would harm an interest protected by that exemption.

This latter requirement, generally known as the *foreseeable harm standard*, was based on a view that even if a record was technically not required to be released (because it was protected from disclosure by a FOIA exemption), it should not be withheld from a requester unless the release would be harmful to an interest protected by an exemption.  The FOIA Improvement Act of 2016 codified the foreseeable harm standard, creating a heightened standard. Therefore, identifying a FOIA exemption that applies to a responsive record now is usually not the end of the analysis of whether the record should be withheld.  Recent case law also supports this view and courts have required the showing of a particularized harm in support of withholding.

## III. When to Apply the Foreseeable Harm Standard

### a. When Is the Foreseeable Harm Analysis Needed?

If you assess that a FOIA exemption applies to a responsive record for seven of the nine FOIA exemptions as noted below, you must then also decide whether it is reasonably foreseeable that harm to an interest protected by the exemption would result from the disclosure.  Certain of these exemptions do not require an extensive foreseeable harm analysis as the Act's exemptions have a firm harm requirement built into them.  Two other FOIA exemptions, as described below, do not require a foreseeable harm analysis.

### i. No Foreseeable Harm Analysis Required (Exemptions 1 and 3)

In accordance with the FOIA Improvement Act of 2016, a foreseeable harm analysis is specifically not required for records that are either: 1) protected by a statute other than the FOIA; or 2) otherwise prohibited from disclosure by law.   As a result, a foreseeable harm analysis is generally unnecessary for records covered by Exemptions 1 and 3.

---

[5] 5 U.S.C. § 552.
[6] *See* 5 U.S.C. § 552(b).
[7] Disclosures of records may be in full or in part, depending on the type of record and the applicability of exemptions.

2

- Classified records are covered by Exemption 1. It is against the law to disclose them to an unauthorized person, so records protected by Exemption 1 are prohibited from disclosure by law and a foreseeable harm analysis is not necessary.

- Records that are protected by a statute other than the FOIA are covered by Exemption 3.[8] The amendments in the FOIA Improvement Act of 2016 explicitly note that a foreseeable harm analysis is not necessary for these records.[9]

### ii. Concise Foreseeable Harm Analysis Required (Exemptions 4, 6 and 7)

For records covered by Exemptions 4, 6 and 7, a detailed foreseeable harm analysis is usually unnecessary because a harm analysis is built into these exemptions due to what they protect: commercial and financial information (Exemption 4)[10], personal privacy[11] (Exemptions 6 and 7(C)) and records or information compiled for law enforcement purposes *(*Exemption 7*)*.

### iii. Detailed Foreseeable Harm Analysis Required (Exemptions 2, 5, 8, and 9)

For records covered by Exemptions 2, 5, 8, and 9, a detailed foreseeable harm analysis is necessary because a harm analysis is not already built into these exemptions. This memorandum will focus mostly on Exemption 5 since that exemption is relied upon extensively by the Department and, as explained further below, where courts have required agencies to provide a rigorous and particularized showing of harm for each category of documents to be withheld.

*Exemption 2* protects records that are related solely to the internal personnel rules and practices of an agency (for example, records an agency typically keeps to itself for its own use that only relate to issues of employee relations and human resources). Invoking Exemption 2 and articulating a foreseeable harm for records covered by it will be possible under limited circumstances where the Agency can articulate a particularized harm that may result from release. For example, the foreseeable harm arising from the release of internal interview questions that are reused for particular vacant positions would interfere with the proper assessment of the applicants' qualifications.

---

[8] For example, the U.S. Department of Justice's Office of Information Policy (OIP) often provides a list of Exemption 3 statutes that courts have upheld. Available here: https://www.justice.gov/oip/page/file/1394846/download.

[9] *See* 5 U.S.C. § 552(a)(8)(B).

[10] Records that contain trade secrets and confidential or privileged commercial and financial information are covered by Exemption 4.

[11] Exemptions 6 and Exemption 7(C) withholdings are meant to protect against disclosures that could constitute an unreasonable invasion of personal privacy and could result in physical, professional, and other types of harms against such individuals. If you have properly evaluated the application of these exemptions, then it is likely that the foreseeable harm standard would also be met.

*Exemption 5* protects inter-agency or intra-agency materials that would normally be privileged in civil discovery. This exemption incorporates privileges such as the deliberative process privilege (which generally protects records that are pre-decisional and include deliberations about a legal or policy matter), the attorney-client privilege (which protects confidential communications between an attorney and the client relating to a legal matter for which the client has sought or received legal advice), and the attorney work-product privilege (which protects records prepared by an attorney in reasonable contemplation of litigation).

The below list are policy purposes for why the privileges exist that are covered by Exemption 5.

- The release of materials covered by the deliberative process privilege (for example, drafts) could cause injury to the decision-making process, a chilling effect on discussion, hasty or uninformed decision-making, and public confusion.[12]

- The release of materials covered by the attorney-client privilege (for example, confidential emails between an attorney and their client asking for and receiving legal advice) may be that the lawyer would no longer be kept fully informed by their client, resulting in unsound legal advice and advocacy.

- The release of materials covered by the attorney work-product privilege (for example, attorney notes made in reasonable anticipation of litigation) may be harm to the adversarial trial process by exposing the attorney's preparation to scrutiny.

*Exemptions 8 and 9:* Exemption 8 protects information of agencies responsible for the regulation or supervision of financial institutions and is almost never used by the Department. Exemption 9 protects geological and geophysical information and data, including maps, concerning wells (i.e., water wells, natural gas wells, and oil wells). Since both exemptions are rarely asserted for withholding DHS records, this memorandum will not address how the standard may apply if asserted. If you are not sure whether Exemptions 8 or 9 applies to a responsive record (or portion of it), seek additional information from a department or agency subject-matter expert.

In summary, the foreseeable harm standard is an independent and meaningful burden on agencies, representing a heightened standard. To meet this standard, agencies must identify *specific* harms to the relevant protected interests that it can reasonably foresee *would* result from disclosure and then connect the harms in a meaningful way to the information being

---

[12] For example, a requested record might be an inter- or intra-agency draft. The process by which a document evolves from a draft into a final document is inherently deliberative and Exemption 5's deliberative process privilege would generally apply. However, before you can properly withhold a particular draft under Exemption 5's deliberative process privilege, you must consider whether the release of that particular draft would harm an interest protected by Exemption 5.

withheld. To do this, agencies can describe the contents of the withheld records (e.g., the records contain descriptions of threats and hazards) and how release of the contents would negatively impact members of the public, agency employees' work, or any other interest protected by a FOIA exemption.[13]

As a reminder, prior to analyzing whether the standard should be applied at all, you must carefully review all portions of the record to be sure they fall within the scope of the claimed exemption. You must also, if possible, make a partial disclosure by reasonably segregating any non-exempt information. FOIA professionals and analysts are encouraged to document how they have applied the foreseeable harm standard in case a requester administratively appeals an initial response and if it is further litigated.

### b. *When to consult with a Subject Matter Expert (SME)/Program Office or Agency Counsel?*

Once you have identified that an exemption applies to a record, you must decide whether any foreseeable harm would result from its release. Seeking additional information from a SME/Program Office to assess relevant factors to inform your articulation of foreseeable harm is a best practice that ensures you have relevant facts needed to make sure your application of an exemption is reasonable and well grounded.

---

[13] For instance, prematurely revealing threats and hazards would cause confusion to the public and may result in members of the public taking action on potential threats and hazards where no action is warranted, or in a manner not suggested by a recommendation contained in the documents.